Good morning, Counsel. Good morning, Your Honor. Counsel, on behalf of the Court, before you proceed, we would like to thank you for accepting this appointment pro bono, and we thank you for your efforts on behalf of the Court. Thank you, Your Honor. It's a pleasure. Good morning, Your Honors. If I may begin, my name is Alexa Lawson-Reamer. I'm with Sullivan & Cromwell. As Your Honor just pointed out, I'm appearing pro bono on behalf of Petitioner Manuel de Jesus Orellana Tobar, who is actually also present with us in the courtroom today. I thank the Court for the opportunity to present argument on his behalf. Your Honors, at Mr. Tobar's merits hearing, the IJ expressly stated that he declines to make and he does not have a basis to make a negative adverse credibility ruling finding. However, the legal consequence of the IJ's decision is that Tobar's testimony needed to be accepted as true. The BIA completely flipped this legal requirement on its head. Well, did they actually completely flip it, or was this the case, that they found Mr. Tobar to be credible, to be truthful, but they found his story to be incredible? Isn't there a distinction there between finding Mr. Tobar to be, not to be lying, but that his story was just not believable, that an objective listener to the story wouldn't find that it resulted in his meeting the standard? Your Honor, respectfully, two points in response. One, being under Mendoza, Mann, and Bau, this Court says that you can't find an implicit credibility ruling. You can only state explicitly that there is an adverse credibility. But second, to the point that they didn't find his story plausible or believable, I would argue this is first, like I said, the implicit credibility, but also any implausibility needs to be supported by specific cogent reasons. Here, the I.J. did not have specific cogent reasons to support the implausibility finding. In fact, looking at the record evidence, including the newspaper articles and the U.S. State Department, these both corroborate Mr. Tobar's testimony. The State Department, which the I.J. expressly admitted, corroborates the specific part of the story that the I.J. said he found not worthy of belief relating to the sergeant, his close friend, who was murdered because of his whistleblower status, that his sister and mother were involved in these kidnappings. So respectfully, there's no cogent reasons, there's no specific legitimate reasons to support the I.J.'s finding. What about the fact that he says he was constantly chased by armed men in El Salvador, armed men who were carrying weapons, and they were close enough for him to see and identify, but they never shot at him, and they never did anything except chase him? Is that a plausible story? Well, certainly, Your Honor, in Jabril, this court found that somebody who was shot and beaten and survived after seven hours in the middle of a civil war, that that story, when the I.J. initially found it to be implausible, that implausibility finding was not supported by cogent reasons, that it was not contradictory. The I.J. did not point to specific objective evidence in the record that contradicted the testimony of that particular applicant. And here, there is no evidence in the record that contradicts Mr. Tobar's testimony. Does it have to be contradicted if it's just hard to imagine that people chase somebody all over town and carry guns and show guns at them and don't shoot them the way they shot Carrillo? Your Honor, this court also, in other instances, such as an anonymous note and a stranger following, without any additional detail, has found that that was substantial, that was significant evidence to establish persecution. So you need not be able to identify the specific dates and times in which you were chased. You need not be able to identify even the names of the perpetrators. The fact that they called him on the phone and said that they were going to kill him in the same manner that they killed his close friend who had just turned state witness and was about to testify against the corrupt police forces and the kidnappers, this right there, that testimony, which needs to be accepted as true because the I.J. specifically declined to make an adverse credibility ruling, that is the nexus that Your Honors need to find that he's eligible for asylum. May I direct your attention to the second element, which is probably more of a problem? What is the statutory nexus which this asylum seeker has proven? Your Honor, he's being persecuted on account of his imputed political opinion or in the alternative. What is the political opinion? In this instance, Your Honor, his close friend, Sergeant Carrillo, was about to testify against the corrupt police forces and the kidnappers. In the record, in this country report that the I.J. admitted, it specifically details at least 12 policemen that were part of this corrupt kidnapping ring. And Mr. Tobar, in his position in the police force and his close relationship with Sergeant Carrillo, this association, both in proximity to Mr. Carrillo and in time, the fact that the death threats followed immediately after Sergeant Carrillo's murder and said, I'm going to kill you in the way that I killed Sergeant Carrillo. I'm having difficulty distinguishing between a plain gang threat to kill and something which smells like political opinion. I mean, this man wasn't a member of any political party, wasn't an activist in any political movement. He wasn't identified as a member of any party. So where's the political opinion imputed him? Certainly, Your Honor, I would point you to Curvaggian Beholder, in which this court held that the status of an imputed whistleblower was sufficient for political opinion grounds and protected for eligibility for asylum. In that case, the individual was approached by an opposition reporter and asked to tell about one incident in the military. The court ultimately said that he wasn't actually whistleblowing, but that the perception that he was whistleblowing against the military was sufficient. Give me that case again and speak slowly. Sure. It's difficult to pronounce on my end as well. It's Curvaggian Beholder, and that, Your Honor, is at 778-F3D-1101. And that's from 2015, Your Honor. Is that one of our cases? It is, Your Honor. What year? 2015. Okay. Curvaggian? Curvaggian. Curvaggian. All right. Did you cite that in your brief? Sure, Your Honor. Yes, Your Honor, we did. I can actually give you the page on which we cite it. We cite it in opening brief at length, and in our reply brief we cite it on pages 6 and 7. Okay. Your Honor, respondents also cite in their brief Cataria v. INS, which says that when there is no explicit adverse credibility finding, you must accept his testimony as true. So here, when you accept someone's testimony as true, the nexus to that imputed political opinion necessarily follows. Well, you have to accept his testimony, and you have to accept the story as being true, but do you have to accept the conclusion as being true, which is that isn't the IJ supposed to determine whether or not there was an objective component to the story, whether or not someone hearing the story would come to the same conclusion that Mr. Tobar himself came to, that he had a well-founded fear of persecution? Certainly, Your Honor, Mr. Tobar's testimony, as corroborated by the newspaper reports and the U.S. Country Report, do support the substantial evidence of a fear of persecution based on this imputed political opinion. But it isn't necessarily the case that in making a credibility finding, you have to find his conclusion to be true. Your Honor, the IJ need not conclude that he fit within a protected ground, but he must accept the statement that he was being chased on account of his association with Sergeant Carrillo as true because the words coming out through the phone to him, I'm going to kill you in the way that I killed Sergeant Carrillo, that's an association immediately following the murder. He was seen in public with him. He exercised with him. He had a three-year professional relationship with the gentleman. The news reports in the record establish that Sergeant Carrillo was about to testify against the corrupt police forces and the kidnappers, which is in and of itself a whistleblower status and a political opinion. So Mr. Tobar's association with him is sufficient. Isn't your claim that the whistleblower status was exhausted before the IJ? Yes, Your Honor. I understand that that's one of the government's arguments, but I'd argue it's a strawman argument. First of all, in Tobar's pro se appeal to the BIA, he said he was a member of a group of people who have gone to the police and that gang members believe they're a threat to him. As Your Honors know, you should construe his pro se application liberally. Additionally, Tobar's counsel at his merits hearing said that he was associated with police officers who have been killed and have been considered to have information about either the underlying case or the killing itself and that individuals believe Tobar has information about the underlying case, not the case itself. Give me a citation to the transcript before the IJ where he claims to be a whistleblower. Certainly, Your Honor. The record at 101 is where Mr. Tobar's counsel says that, and the IJ also recognized the independent basis of an imputed political opinion, and I believe that that's at the record at 8. Your Honors, I see that my time has expired. I hope to reserve two minutes for rebuttal, but I'll permit the government to continue, and if you have any additional questions after that, I'm happy to answer them. We'll give you a minute for rebuttal, Counsel. Did you have any additional questions, Judge Bego? All right. Thank you. Thank you. Thank you. Good morning. My name is Kevin Conway. I'm appearing on behalf of the government in this case. Mr. Tobar failed to meet his burden of proof for relief sought, and the evidence of record does not compel a contrary conclusion in this case. If I may address some of the issues that were questions that were asked by the panel. I think in the speaking in regard to the due process claim that Mr. Tobar did not have any notice of his, that there was a violation of his due process because he did not have notice that there was a credibility problem with his testimony. Even though the immigration judge found that he could not make an explicit adverse credibility determination, he did find several instances of implausibility, which led him to believe that he had not made a credible claim, as Judge Eaton has pointed out. In that case, and because of that, he has been put on notice that there was a problem with the credibility of his claim. What's implausible about his claim? Carrillo's a whistleblower. He says he's going to testify against the cops who are helping the kidnapping gangs. And Carrillo gets assassinated. Then the gangs call Tobar and say, you're going to get the same treatment that Carrillo got. What is implausible about that? In the first instance, I would say that the defining or attributing whistleblower status to the Sergeant Palaccio or Carrillo was a little bit of a stretch. In whistleblower status, it's an individual who finds that there is corruption in a, my understanding of the definition of whistleblower status is people find out that there is corruption in an institution, and they bring that to the police in order to root out that corruption. Wait a minute. If Sergeant Carrillo is about to testify or to inform against the police, you say that the first thing he should do is to go to the police  No, I'm saying the reason for him going to them is not to root out or to expose corruption, but to save his mother and sister and himself, because even the newspaper articles say that his whole reason for doing so was to get his mother and sister out of jail and for all three of them to then be able to leave the country. I think that that's a different story than a whistleblower who is trying to root out corruption. And even if you read the story, the newspaper stories, and also the Department of State reports, it does mention Mr. Carrillo's mother and sister in those stories, but it doesn't mention any connection between the two of them. All right, so the primary motivation for Carrillo informing on what he considers to be corrupt police is to get his mother and daughter out of jail because they've been feeding these kidnapped persons, supposedly. Right, they were implicated in the- But he's saying, and the way I'm going to get out of here, get you out of jail, is to inform on the corrupt police. You're saying that that's invalid and implausible unless he first goes to the police that he's going to finger and say, I'm going to finger you? No, I don't think it's implausible because I don't think that Sergeant Carrillo is implausible. His story is not implausible. I'm saying that the implausibility comes when- I shouldn't say the implausibility, the nexus between what Sergeant Carrillo was doing and the petitioner's case and the petitioner's story in this case. What's the implausibility then if Carrillo is not implausible in the story he tells? And Mr. Tabor does not have an adverse credibility finding when he says, the people called me up and said I was going to get the same treatment as Carrillo did. What's implausible now? I'm not saying that that's necessarily plausible. I'm saying there's not a nexus between the two. And the reason I say that there's not a nexus between the two is because even in his testimony and in the newspaper articles, the individuals who supposedly killed Sergeant Carrillo were never identified. The petitioner's case was never able to identify the people who threatened him, even though he saw them, even though he received word from them. And over time, Mr. Tabor's story has evolved from the original when he filed his I-589 in which he identified gangs and the reason- Mr. Tabor is not credible, and I don't doubt that there are bases upon which to find him not credible because he has changed his story or he's filled it in differently at different times. But that's something that the IJ should do and didn't do. We can't do that. You can't do that. I understand, and the board can't do that. And the board didn't do that. Well, they agree with the immigration judge that the claim, as Judge Eaton has said, overall was difficult to believe. Not that these- But why? What are the specific cogent reasons why the overall story was difficult to believe? That's what I'd like to find out. I think that you actually asked questions with regard to that in the beginning by asking, you know, this is an individual who is a police officer who has nine years on the force but has no way of identifying or recognizing people who are supposedly chasing him. He takes no action in order to find out who these people are. He reports to nobody in the police force that he is being chased or followed. I understand that he says he couldn't because he didn't trust people in the police force, but that doesn't mean that everybody in the police force, the 1,000-member police force that he belonged to or the 200 members of his specific force, he would have us believe that only he and Sergeant Carrillo were the ones who could be trusted, and Sergeant Carrillo is now deceased. So I think that that's one of the impossibilities that the immigration judge was hitting on. Is there some evidence that there was a Simon Pure group of policemen to whom he could go and tell the truth? No, but in the same token, there is not any proof that the entire police force was corrupt as well. Yes, in some instances there have been investigations and actual trials and convictions against police officers who have been involved in these. But the issue that we have or that we pointed out is the nexus between what Sergeant Carrillo was doing and what Corporal Tobar's story, or I should say Mr. Tobar's story. How long was it after Sergeant Carrillo's assassination that Mr. Tobar left Salvador? Three years. And I'm sorry, I don't recall. Does he give a timeline in which, for instance, the last threat was made before he left? My reading of the record, no, and that question may not have actually been asked, but he said that actually his testimony was it was constant two to three times a week over that period of time. Over all three years? From 1999 to 2002. And was there one precipitating event that made him decide that, was there a straw that broke the camel's back that made him decide to leave? According to him, it was Sergeant Carrillo's death. Which occurred three years earlier. Three years before that, which also I think strains the nexus portion of this. In addition, Mr. Tobar has testified that he has relatives who still remain in El Salvador who have been contacted supposedly by or who have been seen by these individuals, but also have never been harmed. And Mr. Tobar himself was never harmed, physically harmed. In fact, he was asked that question in the testimony. Someone evaded the answer. But acknowledged that police officers in El Salvador are often in danger, as police officers are pretty much anywhere in the world, I would say. So our issue is not so much with the problem with Mr. Tobar's story is, I believe, the nexus between his situation and Sergeant Carrillo's. What is your view as to your learned friend's position that the nexus is there because there's evidence of imputed political opinion? Well, the imputed political opinion is the whistleblower status supposedly of Sergeant Carrillo. And which is perceived to apply to Tobar also according to Tobar's claim that the threatening people think that he is as dangerous to them as Carrillo. That's correct. Sorry, go ahead, Your Honor. So why isn't the whistleblower claim good for imputed political opinion status? I think because of the, well, our problem with the whistleblower status itself is that we don't think that it's necessarily appropriate in Sergeant Carrillo's position, but also because of the fact that there's never been any tie between Mr. Tobar and Mr. Carrillo beyond his friendship. When you say it's not appropriate, appropriate in what way? I mean, you don't agree with it, but tell me, why isn't it valid? Just because of the definition of a whistleblower and why Sergeant Carrillo was taking the action that he did. Is it part of your defense or part of your respondent's position that the whistleblower claim was not preserved in the IJ proceeding? Yes, and actually before the board because it was not so much, well, the whistleblower was never raised actually as a term until the current brief that is before the court, the replacement brief that's before the court. It was not exhausted before the board specifically. In fact, Mr. Tobar was pro se before the board and had completely different PSG, particular social group, and political opinion claims before that. Had a different political opinion and particular social group claim before the IJ. And actually in his pro se brief to this court stated that, changed a story yet again saying prior to and in his testimony stated that he was the only one who was contacted. But in his brief to this court stated that he and others were presumed to be or assumed to be or were suspected of being involved in the kidnappings themselves. So as you can see, this is a situation that has evolved over the past 14 years or a story that has evolved over the past 14 years, which I think is what leads to the difficulty with the claim being credible. So counsel, if I understand your argument, do you characterize Mr. Sartre-Curiel more as a cooperating witness than a whistleblower? And you think that differs from the traditional whistleblower scenario that we see in these cases? Yes, Your Honor. So why does that make a difference? I think it makes a difference because of the imputed political opinion. Because he's, Sergeant, I mean, Mr. Tovar is in a completely different position than Sergeant Curiel was. If Sergeant Curiel was just doing this to root out or to expose corruption, there might be more of a connection between the two. But Sergeant Curiel was doing it to save his mother and sister, which cannot be imputed. Those same reasons cannot be imputed to Mr. Tovar. All right. Thank you, counsel. Thank you. Rebuttal? We'll give you one minute. I've read your 101 citation. I don't see anything about a whistleblower there. I see a claim about a particular social group, but we have a lot of cases saying that a witness who is threatened by a criminal gang is not a member of a particular social group. This isn't an Enriquez situation where there's been particularity. And Enriquez, the woman, actually testified against the gang and put two of them in jail. So this isn't really a particular social group case. You're relying on imputed political opinion, right? Your Honor, Tovar has two independent bases that Your Honors could find him eligible for asylum, the first being the imputed political opinion that the IJ expressly recognized. And I'll point to page 8 of the IJ's opinion, which is at the record on page 34, where he says the court must also consider the possibility as to whether this asylum claim may take into consideration imputed political opinion. Taking Tovar's appeal to the BIA construed liberally as a pro se appeal, that his claim there was preserved. You're citing from the BIA decision? Your Honor, I'm pointing to the IJ's decision, which is on page 8 of his decision at the record at page 34. Okay, so what language are you saying? At the end of that paragraph, Your Honor, it says the court has also considered the possibility as to whether his asylum claim must also take into consideration imputed political opinion. And then, Your Honor, looking at page 101 where – I don't see that on page 34 of the record. It's at the very end – Oh, the first paragraph. Yes, Your Honor. The very last two sentences. And so what did the IJ rule in terms of the imputed political opinion? Your Honor, because the IJ found Mr. Tovar's testimony implausible, he determined that there was no protected ground. Either based on political opinion or social group, which, Your Honor, as Your Honors noted on bank and Your Honor Bayh authored that opinion, the perception of what the persecutors believe may be what matters most. So that second ground, that social group status of Sergeant Carrillo as a witness who's testifying against his gang and the police officers, that is an imputed status in a social group. But speaking, Your Honors, to this other point that the government raised and that Your Honors asked questions regarding the whole reason for doing this by Sergeant Carrillo was that it was to save his mother and sister, Your Honors, I'd remind the government that this is a pre-Real ID Act case, that the basis for Sergeant Carrillo's political opinion and therefore what's imputed to Mr. Tovar, it need not be the sole motivation for his action. The fact that Sergeant Carrillo was going to testify against corrupt policemen and kidnappers for multiple reasons, including turning over and turning state's evidence and exposing all of this corruption is sufficient. So you said there were two bases for relief. The first was imputed political opinion. What's the second? Your Honor, the second is the imputed status in the social group, which Enrique Rivas, as Your Honors say, is almost directly on point, and the Third Circuit in Amonfi has explicitly recognized the perceived status in a social group. In that case, the gentleman was perceived to be gay, and he was then found to be protected as a perceived member of a social group. What's the social group here for Mr. Tovar? Your Honor, the imputed social group would be individuals that are going to testify against the gangs and the police officers in El Salvador in the wake of the Civil War. So our standard of review is substantial evidence. Would you agree? Yes, Your Honor. And so is it your argument that we are compelled to find or compelled to make a conclusion that is contrary to that made by the agency? That the facts only go one way? I should clarify, Your Honor. Your Honors may review de novo this due process issue, which has completely infected the BIA's decision. Okay, taking away the due process issue, because we haven't talked about that very much, in terms of whether or not there was a nexus to a protected ground, don't we review that for substantial evidence? Yes, Your Honor. And so that means the only conclusion we can reach from the facts would be contrary to the conclusion the agency made? That's correct, Your Honor. And do you think that standard has been met? Yes, Your Honor. Substantial evidence supports a nexus to an imputed political opinion. But that's not the question. The question is, is the only outcome we can reach that there was a nexus to a protected ground? That's the only outcome that can be reached based on these facts. Respectfully looking at Tobar's credible testimony, the newspaper articles, and the country report, the record compels the conclusion that Mr. Tobar is the nexus is met for the imputed political opinion because of Sergeant Creo's status as a whistleblower. All right, thank you, Counsel. Any other questions? All right, thank you, Counsel. Thank you to both Counsel.
judges: Rawlinson, Bea, Eaton